UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

LAKEN J. CONSUELO
709 East Sixth Street, Apt #8
Owen, Wisconsin 54460

    Plaintiff,

    v.                                          Case No.: 16-cv-658

STAFF MANAGEMENT/SMX                **JURY TRIAL DEMANDED**
1233 International Drive
Eau Claire, Wisconsin 54701

    Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff, Laken J. Consuelo, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

    1.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Americans with Disabilities Act ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101, *et. seq*.

    2.    The unlawful employment practices of which Plaintiff complains occurred within the Western District of Wisconsin and therefore venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

    3.    Plaintiff, Laken J. Consuelo, is an Adult female resident of the State of Wisconsin residing in Clark County with a post office address of 709 East Sixth Street, Apt #8, Owen, Wisconsin 54460.

4. Since approximately the year 2010, Ms. Consuelo was diagnosed Anxiety, along with other mental health conditions.

5. Ms. Consuelo's Anxiety, along with her other mental health conditions, are permanent mental health conditions that significantly and negatively affect her brain functioning and, among other things, her ability to sleep, concentrate, perform manual tasks, interact or communicate with others, and, at times, work.

6. Ms. Consuelo was prescribed and takes medication to treat the negative effects and symptoms of her Anxiety and her other mental health conditions.

7. Ms. Consuelo was prescribed and takes the medication Clonazepam to treat the negative effects and symptoms of her Anxiety.

8. A common side effect of taking the prescription medication Clonazepam is dry mouth.

9. Ms. Consuelo uses the prescription medication Clonazepam to treat the negative effects and symptoms of her Anxiety in the recommended dosage, frequency, and in accordance with her treating physicians' directives.

10. Defendant, Staff Management/SMX, was, at all material times herein, a foreign corporation with a principal office address of 1233 International Drive, Eau Claire, Wisconsin 54701.

11. TrueBlue, Inc. is the parent company of Defendant and has a principal office address of 1015 A Street, Tacoma, Washington 98402.

12. TrueBlue, Inc., via Defendant and other of its entities, provides temporary staffing throughout North America to its clients (other companies and organizations) in the services, retail, wholesale, manufacturing, transportation, aviation, and construction industries.

13. Defendant is a staffing company, a self-described "recognized leader in comprehensive staffing and contingent workforce solutions."

14. Defendant's application process is as follows: (1) an individual completes an employment application; (2) the individual undergoes a skills test; (3) the individual interviews for a position (and is presented with a position description and requirements, pay scale documents, and any other documentation related to expectations of the position); (4) the individual is offered the position; (5) the individual attends orientation and completes pre-hire documentation and other orientation paperwork; (6) the individual takes a drug test; and, if the individual passes the drug test, (7) the individual begins working at Defendant's client.

15. On or about April 29, 2015, Defendant, specifically Katie Bingen, Account Manager, interviewed Ms. Consuelo for the position of Machine Operator at Phillips-Medisize Corp. (hereinafter simply "Phillips"), one of Defendant's clients.

16. On or about April 29, 2015, Defendant offered Ms. Consuelo the position of Machine Operator at Phillips.

17. On or about April 29, 2015, Ms. Consuelo accepted the position of Machine Operator at Phillips.

18. Defendant offered Ms. Consuelo the position of Machine Operator at Phillips on or about April 29, 2015 contingent on her passing a drug test, attending orientation, and completing pre-hire documentation and other orientation paperwork.

19. On or about April 29, 2015, Ms. Consuelo told Bingen that she (Ms. Consuelo) takes prescription medication for Anxiety and that she was unsure as to whether she would pass a drug test because of this. Bingen responded, "That's okay. We'll work things out, or words to that effect.

20. The job duties of the Machine Operator position that Defendant offered to Ms. Consuelo on or about April 29, 2015 did not relate to or affect public safety.

21. On or about May 8, 2015, Ms. Consuelo arrived at Defendant to take a drug test, attend orientation, and complete pre-hire documentation and other orientation paperwork for Defendant.

22. On or about May 8, 2015, Bingen administered a drug test to Ms. Consuelo.

23. The type of drug test that Bingen administered to Ms. Consuelo on or about May 8, 2015 was an "oral swab test" (hereinafter simply, and when referring to the drug tests that were administered to Ms. Consuelo on or about May 8, 2015, the "oral swab test" or the "oral swab tests").

24. Defendant administered the oral swab test to Ms. Consuelo on or about May 8, 2015 at the request of Phillips.

25. On or about May 8, 2015, Bingen administered the oral swab test to Ms. Consuelo approximately five (5) or six (6) times.

26. The results of the approximately five (5) or six (6) oral swab tests that Bingen administered to Ms. Consuelo on or about May 8, 2015 were inconclusive.

27. Ms. Consuelo did not pass any of the approximately five (5) or six (6) oral swab tests that Bingen administered to her on or about May 8, 2015.

28. On or about May 8, 2015 and after the results of the approximately five (5) or six (6) oral swab tests that Bingen administered to Ms. Consuelo were inconclusive, Bingen asked an employee of Defendant to take the oral swab test from the same kit that Ms. Consuelo's tests had been taken from, and the results came back as normal/passing.

29.     On or about May 8, 2015, Bingen informed Ms. Consuelo that she did not produce enough saliva for the oral swab tests that were administered to her, resulting in the oral swab test results being inconclusive.

30.     On or about May 8, 2015, Ms. Consuelo informed Bingen that she (Ms. Consuelo) takes prescription medication for her Anxiety.

31.     On or about May 8, 2015, Ms. Consuelo informed Bingen that the prescription medication she (Ms. Consuelo) takes for her Anxiety causes dry mouth.

32.     On or about May 8, 2015, Ms. Consuelo informed Bingen that the reason she did not produce enough saliva for the approximately five (5) or six (6) oral swab tests was likely because of the prescription medication she (Ms. Consuelo) takes for her Anxiety.

33.     On or about May 8, 2015, Ms. Consuelo informed Bingen that the reason she did not pass the approximately five (5) or six (6) oral swab tests was likely because of the prescription medication she (Ms. Consuelo) takes for her Anxiety.

34.     On or about May 8, 2015, Bingen told Ms. Consuelo that she (Ms. Consuelo) had to pass Defendant's drug test in order to be hired by Defendant.

35.     On or about May 8, 2015, Bingen told Ms. Consuelo that she (Ms. Consuelo) had to pass Defendant's drug test in order to begin working at Phillips.

36.     On or about May 8, 2015, Bingen told Ms. Consuelo that if she (Ms. Consuelo) did not pass Defendant's drug test, she would not be hired by Defendant or begin working at Phillips.

37. On or about May 8, 2015 and after Ms. Consuelo did not pass any of the approximately five (5) or six (6) oral swab tests that Bingen administered to her, Ms. Consuelo told Bingen that she (Ms. Consuelo) would go to her own health care provider later that day and have a drug test administered to her similar to the oral swab tests that Bingen administered.

38. On or about May 8, 2015 and after Ms. Consuelo did not pass any of the approximately five (5) or six (6) oral swab tests that Bingen administered to her, Bingen told Ms. Consuelo that Defendant would not reimburse Ms. Consuelo if she went to her own health care provider later that day and have a drug test administered to her similar to the oral swab test that was administered to her that day.

39. On or about May 8, 2015 and after failing to pass any of the approximately five (5) or six (6) oral swab tests that were administered to her earlier that day, Ms. Consuelo went to her own health care provider and had a drug test administered to her similar to the oral swab tests she received earlier that day.

40. The drug test that Ms. Consuelo took at own health care provider on or about May 8, 2015 was administered by her health care provider.

41. The results of the drug test that Ms. Consuelo took at own health care provider on or about May 8, 2015 were normal/passing.

42. On or about May 11, 2015, Ms. Consuelo physically went to Defendant and provided Bingen with the results of the drug test that her own health care provider administered to her on or about May 8, 2015.

43. On or about May 11, 2015, Ms. Consuelo physically went to Defendant and provided Bingen with written confirmation that she passed the drug test that her own health care provider administered to her on or about May 8, 2015.

44. On or about May 11, 2015, Bingen did not believe and/or accept the written results of the drug test that Ms. Consuelo took at own health care provider on or about May 8, 2015.

45. On or about May 11, 2015, Bingen told Ms. Consuelo that the results of her (Ms. Consuelo's) own drug test results "didn't matter," that she (Ms. Consuelo) was not going to be hired unless she passed Defendant's oral swab drug test, and that she (Ms. Consuelo) could re-apply at Defendant in ninety (90) days.

46. On or about May 11, 2015, Bingen provided Ms. Consuelo with a written note, signed by Bingen and dated May 11, 2015, stating in full: "Based on inability to pass 5 different drug tests, offer is rescinded. May re-apply in 3 – 6 months and we will need to have another drug test resulted [sic] at that time."

47. On or about May 11, 2015, Ms. Consuelo physically went to Defendant and provided Bingen with written information about her Anxiety, including her prescription for and dosage of Clonazepam, the potential or possible side effects of Clonazepam, and her health care provider's contact information.

48. On or about May 11, 2015, Bingen did not believe and/or accept the written information about Ms. Consuelo's Anxiety, including her prescription for and dosage of Clonazepam, the potential or possible side effects of Clonazepam, and her health care provider's contact information.

49. Ms. Consuelo's use of the prescription medication Clonazepam for her Anxiety would not have negatively affected, in any way, her ability to perform the job duties of the Machine Operator position that Defendant offered to her on or about April 29, 2015.

50. Ms. Consuelo did not pass the oral swab drug tests that Bingen administered to her on or about May 8, 2015 because of her (Ms. Consuelo's) use of prescription medication for her Anxiety.

51. Because Ms. Consuelo did not pass the oral swab tests that Bingen administered to her on or about May 8, 2015, Defendant did not hire her.

52. Between approximately May 8, 2015 and May 11, 2015, Defendant did not provide any options or alternatives to its oral swab drug test to Ms. Consuelo in order to be hired by Defendant.

53. Defendant's "Drug Testing Policy" states: "Applicants who are considering employment with Staff Management SMX are required to undergo an oral swab drug screen as a condition of employment. Applicants who refuse to undergo the drug screen, or who test positive for illegal substances, will be in violation of our policy and will not be considered for employment. If an offer is extended and the employee reports to work prior to an oral swab drug screen, their employment will be contingent upon passing the drug screen test."

54. Defendant's "Drug Testing Policy" does not address or mention a policy or procedure for handling oral swab drug screen test results that are inconclusive.

55. Prior to May 8, 2015, Bingen had no personal experience handling oral swab drug screen test results that were inconclusive.

56. Defendant's "Drug Testing Policy" does not state or mention that inconclusive oral swab drug screen test results are disqualifying conditions of employment.

57. Defendant's "Drug Testing Policy" does not address or mention a policy or procedure regarding drugs or medications that are legally prescribed by a medical professional.

58. Defendant's "Drug Testing Policy" does not address or mention reasonable accommodations, as that phrase is used under the Americans with Disabilities Act, as amended.

59. If Ms. Consuelo had begun working in the position of Machine Operator at Phillips on or about May 8, 2015, she would have earned approximately $10.82 per hour and worked more than forty (40) hours per workweek.

60. On June 30, 2015, Ms. Consuelo filed a complaint with the Equal Employment Opportunity Commission – Milwaukee Area Office ("EEOC"), designated EEOC Charge No. 443-2015-01031C, alleging disability discrimination against Defendant.

61. The EEOC issued a Cause determination on Charge No. 443-2015-01031C, dated June 30, 2016.

62. The EEOC issued Ms. Consuelo a Notice of Right to Sue on Charge No. 443-2015-01031C, dated August 5, 2016.

63. Ms. Consuelo has exhausted all administrative remedies and filing requirements prior to bringing this action.

## CAUSE OF ACTION – DISABILITY DISCRIMINATION

64. Ms. Consuelo re-alleges and incorporates paragraphs 1-63 of this Complaint by reference.

65. Defendant intentionally discriminated against Ms. Consuelo on the basis of her disability by denying her employment in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et. seq*.

66. Defendant intentionally discriminated against Ms. Consuelo on the basis of her disability by failing to reasonably accommodate her disability in reckless disregard for her federally protected rights under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et. seq*.

67. As a result of Defendant's intentional discrimination, Ms. Consuelo has suffered damages in the form of lost wages and other employment benefits, emotional distress, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 29th day of September, 2016.

        WALCHESKE & LUZI, LLC
        Counsel for Plaintiff

        s/ *Kelly L. Temeyer*_____
        Scott S. Luzi, State Bar No. 1067405
        Jesse R. Dill, State Bar No. 1061704
        Kelly L. Temeyer, State Bar No. 1066294

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
sluzi@walcheskeluzi.com
jdill@walcheskeluzi.com
ktemeyer@walcheskeluzi.com